Decided at Pendleton, July 20, 1895.

# MOSS *v.* ROSE.
[41 Pac. 666.]

1. Tenants in Common of Irrigating Ditch — Presumption as to Use by One Tenant.— Parties to a contract under which an irrigating ditch is constructed for the purpose of dividing the waters of a creek, providing that each shall appropriate his share of such waters, are tenants in common of the ditch, and the right of appropriation and continuous use of the water by one of the parties is presumably in maintenace of the rights of his cotenant.

2. Abandonment of Water Right.— On an issue as to whether defendant manifested an intention to abandon a water appropriation, the evidence showed that defendant faithfully prosecuted improvements on his land, adding each year to the area in cultivation, and provided for the irrigation thereof from other and more convenient sources, but that he did not put the water in controversy to use until seven years after it was first appropriated. *Held*, that defendant's intention to abandon had not been established.

3. Liability of Cotenant for Repairs to Ditch.— Where plaintiffs and defendant were tenants in common of a ditch, and plaintiffs neglected to repair the same, thereby causing an overflow on defendant's land, defendant had no right to stop up the ditch, as he was equally bound to repair.

Appeal from Malheur: Morton D. Clifford, Judge.

This is a suit by Arthur J. and Alvin S. Moss to enjoin Wm. A. Rose from obstructing the flow of water in a ditch constructed across his lands. The facts are that in November, eighteen hundred and eighty-one, the defendant settled on an arid tract of public land and that prior thereto the plaintiffs had settled on adjoining tracts; that said lands were thereafter surveyed and patents duly issued therefor as follows: To the plaintiff, Alvin S. Moss, for the northeast quarter of section twenty-nine; to the plaintiff, Arthur J. Moss, for the north half of the southeast quarter and the southeast quarter of the southeast quarter of said section, and the southwest quarter of the southwest quarter of section twenty-eight; and to the de-

fendant for the northwest quarter of section thirty-three, all in township twenty-five south, of range forty-six east, in Malheur County, Oregon. The waters of Carter Creek flow in a northerly direction, in a well defined channel, through the western portion of the defendant's land, and those of Sucker Creek, entering the defendant's land at the eastern border, flow in a northwesterly direction, uniting on the land of Arthur J. Moss near its southern boundary. In the spring of eighteen hundred and eighty-three the parties above named and one Thomas Waite commenced a ditch at the west side of Carter Creek, near the south boundary of defendant's land, and jointly constructed it for a distance of about a quarter of a mile, and the plaintiffs continued its construction to their lands, and conducted water therein, which they have continuously used in irrigating their said lands, except when prevented from doing so by the defendant. In October, eighteen hundred and ninety-two, the defendant forbade the plaintiffs from entering upon his premises, or appropriating the water of said creek, and thereafter removed the headgate, filled the ditch, and obstructed the flow of water to the plaintiffs' premises, to prevent the continuance of which they bring this suit, and allege that the ditch was constructed and owned by the parties as tenants in common, but that the defendant had abandoned his interest, and pray that he may be restrained from intermeddling with said ditch, or obstructing the flow of the water therein. The defendant, after denying the material allegations of the complaint, alleges that he was the prior appropriator of the waters of Carter Creek, at a point about one mile above his land; that the plaintiffs' diversion and appropriation had at all times been by his permission, which he had revoked, and that he had filled the ditch because of the plaintiffs' failure to keep it in repair. A reply having put in issue the allegations of

new matter contained in the answer, the cause was referred to John Wheeler, who took the evidence, from which the court found that the ditch had been constructed by the parties as tenants in common, but that, by reason of the defendant's failure to appropriate the water within a reasonable time, he had abandoned his right to its use; that by such abandonment the plaintiffs became entitled to the exclusive use thereof, and rendered a decree as prayed for in the complaint, with fifty dollars damages, and the costs and disbursements of the suit, from which decree the defendant appeals.

MODIFIED.

For appellant there was a brief by *Messrs. Olmstead and Courtney,* and an oral argument by *Mr. M. L. Olmstead.*

For respondent there was a brief and an oral argument by *Mr. Will R. King.*

Opinion by MR. JUSTICE MOORE.

1.    A careful examination of the evidence leads us to the conclusion that the court very properly found that there was an agreement, by the terms of which the plaintiffs, in consideration of their labor and expense in constructing the ditch, should have the right to appropriate one half the water conducted therein, for the purpose of irrigating their lands; and hence the principal question to be considered is whether the defendant, by not appropriating the water till eighteen hundred and ninety, had abandoned all his interests therein.    The ditch having been constructed under an agreement between the parties that each should be entitled to appropriate his share of the waters of Carter Creek, rendered the parties tenants in common of the ditch and right of appropriation, and the defendant's property rights must

be governed by the rules of law regulating such: Black's Pomeroy on Water Rights, § 63; Freeman on Cotenancy, § 88. Had the plaintiffs abandoned that ditch, and made a subsequent appropriation through another, there might have been just reason for considering the effect of the defendant's delay in applying the water so diverted to some beneficial purpose; but the continued use of the water by the plaintiffs is presumed to be in maintenance of the rights of the defendant for whom they held it as tenants in common: *Gunter* v. *Laffan,* 7 Cal. 588. And even if their possession was adverse, it has not continued a sufficient length of time to entitle them to any rights by prescription.

2.   Examining the evidence from which an inference of the defendant's intention to abandon the appropriation is to be deduced, we find that in the spring of eighteen hundred and eighty-two he dug a short ditch about one mile above his land, and built a dam in Carter Creek, by means of which he turned a portion of the waters of that stream into a slough, from which he constructed a ditch and recaptured the water thus diverted. With this, and water diverted from Sucker Creek, which he tapped by another ditch, he was enabled to irrigate that portion of his land lying east of Carter Creek, and, after having reduced the same to cultivation, he, in eighteen hundred and ninety, commenced to improve the tract on the west side of said creek. It is manifest that from the time the defendant appropriated the water, until eighteen hundred and ninety, he had exercised due and reasonable diligence in reducing his land lying east of Carter Creek to cultivation. He had in that time changed an arid sage brush plain of about one hundred acres into a productive farm, and, having succeeded in providing sufficient water for the irrigation of his land lying east of the creek, he immediately turned his attention to the improvement of

that on the west. Having in eighteen hundred and eighty-three made a diversion of the waters of Carter Creek by the ditch in question, the defendant was required to use due and reasonable diligence in appropriating the waters so diverted to some beneficial use. But having made two diversions,—one from Sucker and the other from Carter Creek,—it could not be expected that he must needs abandon the former in order to protect his interest in the latter, nor that he should alternately appropriate the waters of each stream, and make his improvements on both sides of Carter Creek, in order to maintain his original rights. Reasonable diligence only was required, and the evidence shows that the defendant faithfully prosecuted the improvement of his lands, adding each year to the area in cultivation. Upon these facts, we cannot say his intention to abandon the use of the waters in Carter Creek has been established by that degree of proof required in such cases (Black's Pomeroy on Water Rights, § 97); and, as a matter of law, we conclude that the plaintiffs, as tenants in common, held the possession for and maintained the rights of the defendant: *Mining Company* v. *Taylor,* 100 U. S. 37; *Clymer* v. *Dawkins,* 44 U. S. (3 How.) 674.

3. The evidence also shows that the plaintiffs neglected to repair the ditch, in consequence of which it became obstructed, causing an overflow of water on the defendant's land, which washed out quite a gully therein. This, no doubt, precipitated the difficulty, and caused the defendant to take out the headgate and fill the ditch, thereby preventing the water from flowing to the plaintiff's lands, for which injury the court rendered a judgment against the defendant for fifty dollars as damages. In our view of the case, the defendant was equally liable with the plaintiffs for the expense of keeping the ditch in repair, and the failure of the latter to keep up repairs

upon it at their own expense did not authorize the defendant to fill it, for which reason the judgment for damages rendered against him will be allowed to remain. The plaintiffs will be allowed to appropriate one-half of the waters diverted, and required to bear one-half of the expense of maintaining the ditch across the defendant's lands, and, for the purpose of performing their part of the work, they must have the right of entry upon the said lands of defendant along the banks of the ditch. And in case of the default of either party, the other may complete the necessary repairs, and thereupon the party in default shall be liable for one-half the expense therof. The decree of the court below will be modified, and one here entered in accordance with his opinion.

MODIFIED.

Decided February 18, 1895.